**VOTING INTEGRITY PROJECT, INC., Joseph Pena, Francisco C. Carrillo, Joe Hernandez, Pedro Villa, and Theo S. Copeland, Plaintiffs,**

v.

**Elton BOMER, Secretary of the State of Texas, Defendant.**

**Civil Action No. 99–247.**

United States District Court,
S.D. Texas,
Houston Division.

Aug. 9, 1999.

M. Miller Baker, Carr Goodson Warner, Washington, DC, for plaintiff.

Deborah Anne Verbil, Office of the Texas Attorney General, Austin, TX, for defendant.

## ORDER

HITTNER, District Judge.

Pending before the Court is the Motion for Summary Judgment filed by Plaintiffs Voting Integrity Project, Inc., et al. and the Cross Motion for Summary Judgment filed by defendant Elton Bomer. On May 12, 1999, the Court conducted a hearing in which the parties submitted arguments to the Court for their perspective motions. After considering the motions, counsel's oral arguments, the submissions, and the applicable law, the Court has determined that the Motion for Summary Judgment should be denied and the Cross Motion for Summary Judgment should be granted.

Plaintiffs, a nonprofit, public interest organization domiciled in the Commonwealth of Virginia and several individual Texas registered voters, filed this declaratory judgment action on January 26, 1999. Plaintiffs seek to overturn the Texas Early Voting by Personal Appearance statutes ("Texas Early Voting statutes").[1] Plain-

---

1. Plaintiffs list the Texas statutes in consequential order:

1. Tex.Elec.Code Ann. § 82.005: "Any qualified voter is eligible for early voting by personal appearance."

tiffs claim that these statutes conflict with federal voting laws in that the Texas statutes permit Texas voters to cast their ballots before the federal election day as delineated by the United States Constitution and Title 2 U.S.C. § 7 (1999). The Constitution and Title 2 U.S.C. § 7 provide for an exclusive election day in the United States for the election of United States Representatives, United States Senators, and Presidential candidates. Plaintiffs allege that these early voting statutes will impair and dilute federal elections in that there is a high possibility that voters may vote more than once in any given election. Plaintiffs bring this claim pursuant to 42 U.S.C. § 1983 (1999) which states,

> Every person who, under color of any statute ... of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law....

The United States Constitution provides, in part, "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of choosing Senators." U.S.

CONST. art. I, § 4, cl. 1. In 1872, Congress drafted Title 2 U.S.C. § 7, which provides, "The Tuesday next after the 1st Monday in November, in every even numbered year, is established as the day for the election, in each of the States and Territories of the United States, of Representatives and Delegates to the Congress commencing on the 3d day of January next thereafter." Plaintiffs refer to this designation by Congress as the "Federal Election Day". As such, Plaintiffs argue that, by allowing early voting up to seventeen days in advance of Federal Election Day rather than limiting the voting to the day prescribed by statute, the Texas statutes impermissibly conflict with federal law.

Defendant argues the Texas Early Voting statutes comply with federal law. Defendant claims that, although the Texas voting for federal officials may take place before Federal Election Day, the actual tallying of the votes, and therefore the election of one individual to federal office, occurs on Federal Election Day. Accordingly, Defendant claims that the Texas statutes do not conflict with federal law.

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is enti-

---

2.  Tex.Elec.Code Ann. § 85.001(a): "The period for early voting by personal appearance begins on the 17th day before election day and continues through the fourth day before election day, except as otherwise provided by this section."

3.  Tex.Elec.Code Ann. § 85.001(c): "If the date prescribed by Subsection (a) or (b) for beginning the period is a Saturday, Sunday, or legal state holiday, the period begins: (1) on the next regular business day; or (2) on that Saturday or Sunday if early voting is ordered to be conducted on that day under Section § 85.006."

4.  Tex.Elec.Code Ann. § 85.001(d): "If because of the date for which an election is ordered it is not possible to begin early voting by personal appearance on the prescribed date, the early voting period shall begin on the earliest date practicable after the pre-

scribed date as set by the authority ordering the election."

5.  Tex.Elec.Code Ann. § 85.005(a): "Except as provided by Subsection (c), in an election in which a county clerk or city secretary is the early voting clerk under Section 83.002 or 83.005, early voting by personal appearance at the main early voting polling place shall be conducted on the weekdays of the early voting period and during the hours that the county clerk's or city secretary's main business office is regularly open for business."

6.  Tex.Elec.Code Ann. § 85.006(a): "Except as provided by Subsection (b), the authority ordering an election may order early voting by personal appearance at the main early voting polling place to be conducted on one or more Saturdays or Sundays during the early voting period."

tled to judgment as a matter of law." Federal Rule of Civil Procedure 56(c). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also State Farm Life Ins. Co. v. Gutterman,* 896 F.2d 116, 118 (5th Cir.1990).

■ In analyzing the federal and state law, the Court must consider whether Congress intended to pre-empt the state legislation when it drafted Title 2 U.S.C. § 7. "Under the Supremacy Clause, U.S. Const., Art. VI, cl. 2, state laws that 'interfere with, or are contrary to the laws of congress, made in pursuance of the constitution' are invalid." *Wisconsin Public Intervenor v. Mortier,* 501 U.S. 597, 604, 111 S.Ct. 2476, 2481, 115 L.Ed.2d 532 (1991) (citing *Gibbons v. Ogden,* 22 U.S.(9 Wheat.) 1, 211, 6 L.Ed. 23 (1824) (Marshall, C.J.)) "When considering pre-emption, 'we start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress.'" 501 U.S. at 605, 111 S.Ct. at 2482 (quoting *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)).

■ In *Northwest Central Pipeline Corp. v. State Corp. Comm'n,* 489 U.S. 493, 109 S.Ct. 1262, 103 L.Ed.2d 509 (1989), the Supreme Court listed the considerations for determining whether a federal statute preempts the state law. First, the court should examine the express language of the statute to determine Congress' intent to pre-empt. 489 U.S. at 509, 109 S.Ct. at 1273. Absent this express language, the next inquiry examines whether Congress "has legislated comprehensively to occupy an entire field regulation." *Id.* A court may also consider whether the state law conflicts with the federal law in that compliance with both laws would be impossible or in that the state law would create too much of an obstacle to complying with the federal law. *Id.* In reviewing 2 U.S.C. § 7, the Court determines that Congress did not expressly pre-empt state law. Furthermore, the Court determines that Congress has not legislated to occupy the entire "field" of voting in federal elections.

■ The Court further determines that the Texas Early Voting statutes do not conflict with or impede the federal statute. In order to review this conflict, the Court must make a determination as to the meaning of the word "election" in the statute. *United States v. Ron Pair Enters.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (stating that statutory interpretation begins "with the language of the statute itself"). In this instance, the Court determines that the language of the statute is unambiguous. As such, "there is generally no need for a court to inquire past the plain language of the statute." *Id. Webster's Third New International Dictionary* 731 (3d ed.1986) defines "election" as "the act or process of choosing a person for office, position, or membership by voting." The etymology of the word "election" indicates a "choice" or "selection" of an individual. *Id.* Accordingly, the Court determines that "election" constitutes the final selection of a certain individual for office.

■ The Supreme Court has recognized the difficulty in defining "election". In *Foster v. Love,* 522 U.S. 67, ——, 118 S.Ct. 464, 467, 139 L.Ed.2d 369 (1997),[2] the Court stated, "When the federal statutes

---

**2.** The Court notes that Plaintiffs rely on *Foster* to support their claims of Federal Election Day violations. In the *Foster* case, however, the Court voided the "open primary" statute in Louisiana which allowed for the final selection of United States Representatives and United States Senators prior to federal election day. As discussed *infra,* the Texas Early Voting statutes do not create a potential preemptive election of officials and therefore do not conflict with the Constitution or Title 2 U.S.C. § 7.

speak of 'the election' of a Senator or Representative, they plainly refer to the combined actions of voters and officials meant to make a final selection of an office holder." The Court recognized "that there is room for argument about just what may constitute the final act of selection within the meaning of the law...." *Id.* In determining a "final act of selection" this Court determines that it is, as the *Foster* Court indicated, the "combined actions of voters." *Id.* This Court further determines that, in order to determine the combined action or will of the voters, one must tally the votes.

Accordingly, an election or final selection requires the final tallying of the submission of votes. Under this definition, the Texas Early Voting statutes do not conflict with the federal statute. Although these Texas statutes allow the casting of votes before the Federal Election Day, the final tallying of the votes complies with the federal statute in that the votes are officially counted and reported only on the designated Tuesday after the first Monday in every even year. 2 U.S.C. § 7. This definition allows Texas voters to comply with both the federal voting act and the Texas Early Voting statutes. Although Texans can vote for candidates seventeen days prior to the Federal Election Day, their candidates will only be elected after the tallying of the votes. This tallying takes place on Federal Election Day. Accordingly, Texas is in compliance with 2 U.S.C. § 7 in that the election is held on the appointed day.

This construction of "election" also complies with the purpose of Congress' act. In *Foster*, the Court indicated that Congress intended to address the "distortion of the voting process threatened when the results of an early federal election in one State can influence later voting in other States," and "... the burden on citizens forced to turn out on two different election days to make final selections of federal officers in presidential election years...." 522 U.S. at ——, 118 S.Ct. at 468. As the votes are not tallied until the designated Federal Election Day, the casting of early, untallied votes cannot influence later voting in other states. Furthermore, Texas citizens are not burdened with the Texas voting system in that they have more days to vote for their candidates. Instead, voting is more convenient as a result of the Texas voting statutes. Lastly, the elimination of the Texas Voting laws would not assuage Plaintiffs' alleged harm of diluted voting. As noted in the May 12, 1999 hearing, a person desiring to vote in more than one state could easily access several states via air transportation and cast multiple votes. At the present time, Texas implements safeguards to prevent the dilution of votes. *See e.g.,* Tex.Elec.Code Ann. § 61.007. Accordingly, the Court deems that the voting laws in question need not be voided.

Based upon the foregoing, the Court hereby

ORDERS that the Plaintiffs' Motion for Summary Judgment is DENIED. Furthermore, the Court

ORDERS that the Defendant's Cross Motion for Summary Judgment is GRANTED.