**REVISED, JANUARY 28, 2000**

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

_____

No. 99-20757

_____


VOTING INTEGRITY PROJECT, INC., ET AL,

Plaintiffs-Appellants,

VERSUS

ELTON BOMER,

Defendant-Appellee.

_____

Appeal from the United States District Court
For the Southern District of Texas
_____
January 17, 2000

Before DAVIS, JONES, and MAGILL[1], Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

     Plaintiffs, Voting Integrity Project, Inc. and several individual Texas registered voters ("VIP"), appeal the district court's order denying their motion for summary judgment and granting defendant's cross motion for summary judgment. VIP contends that three sections of the Texas Election Code, which permit unrestricted early voting in federal elections, are preempted by federal election statutes that require that the "election" of members of Congress and presidential electors occur

_____

     [1]Circuit Judge of the Eighth Circuit, sitting by designation.

on federal election day.  Because the election of federal officials in Texas is not decided until Texas voters go to the polls on federal election day, we conclude that the Texas early voting scheme is not inconsistent with federal election laws.

## I.

VIP filed this declaratory judgment action against Elton Bomer, the Texas Secretary of State ("the State").  VIP challenges Tex. Elec. Code §§ 81.001, 82.005, and 85.001 ("the Texas Early Voting statutes"), which allow voting to begin in Texas federal elections seventeen days before federal election day.  Unlike traditional "absentee" voting statutes, the Texas Early Voting statutes do not require the voter to give any reason to vote early; the voter has the unrestricted right to vote early.  Specifically, VIP contends that these statutes violate 2 U.S.C. §§ 1, 7 and 3 U.S.C. § 1, which establish the Tuesday after the first Monday in November as the day for the election of federal representatives, senators, and presidential electors throughout the United States.

The parties filed cross-motions for summary judgment.  The district court found no conflict between Texas and federal law and granted summary judgment in favor of the State.  VIP now appeals.

## II.

We review the granting and denial of summary judgment by the district court de novo.  Bodenheimer v. PPG Industries, Inc., 5 F.3d 955, 956 (5th Cir. 1993); Mozeke v. Int'l. Paper Co., 856 F.2d 722, 724 (5th Cir. 1988).  We review the district court's denial of a permanent injunction for abuse of discretion.  Peaches Entertainment Corp. v. Entertainment Repertoire Assocs., Inc., 62

F.3d 690, 693 (5th Cir. 1995).

III.

A.

The Elections Clause of the United States Constitution, Art. I, § 4, cl.1, gives states the responsibility for establishing the time, place, and manner of holding congressional elections, unless Congress acts to preempt state choices.[2] Foster v. Love, 522 U.S. 67, 68, 118 S.Ct. 464, 466, 139 L.Ed.2d 369 (1997). States "are given . . . a wide discretion in the formulation of a system for the choice by the people of representatives in Congress." U.S. v. Classic, 313 U.S. 299, 311, 61 S.Ct. 1031, 1035, 85 L.Ed. 1368 (1941). Thus, a state's discretion and flexibility in establishing the time, place and manner of electing its federal representatives has only one limitation: the state system cannot directly conflict with federal election laws on the subject.

VIP contends that the Texas Early Voting statutes directly conflict with the federal election statutes establishing a single election day. 2 U.S.C. § 7 provides that the "Tuesday next after the 1st Monday in November, in every even numbered year, is established as the day for the election, in each of the States . . . of the United States, of Representatives and Delegates to the Congress . . . ." Titles 2 U.S.C. § 1 and 3 U.S.C. § 1 provide the

---

[2] "The Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the Legislature thereof; but the Congress may at any time by Law make or alter such Regulations, except as to the Places of choosing Senators. U.S. Const., Art. I, § 4, cl. 1.

3

same rule for electing Senators and presidential electors, respectively.

VIP contends that the federal statutes, by establishing "the day for the election," contemplate that the entire election, including all voting, will occur that day. 2 U.S.C. § 7(emphasis added). They argue that "election" is synonymous with voting.

In Foster, the Supreme Court considered whether Louisiana's "open primary" statute conflicted with federal election statutes. 522 U.S. at 70, 118 S.Ct. at 467. Under Louisiana law, an open primary was held for congressional offices in October. Id. All candidates, regardless of party, appeared on the same ballot. Id. If any candidate received a majority of votes in the primary, he or she was considered "elected" without any further action on federal election day. Id. The Court held that Louisiana's open primary system conflicted with federal election statutes because the "final selection" of candidates could be (and often was)[3] "concluded as a matter of law before the federal election day, with no act in law or in fact to take place on the date chosen by Congress . . . ." Id. at 72, 118 S.Ct. at 467 (emphasis added).

Foster is instructive on the the meaning of "election." 522 U.S. at 68, 118 S.Ct. at 466. The Court observed first that the term "election" in federal election statutes "plainly refer[s] to the combined actions of voters and officials meant to make a final

---

[3]Since the adoption of the open primary system in 1978, eighty percent of Louisiana's contested congressional elections ended with the open primary, without any voting on federal election day. Foster, 118 S.Ct. at 467.

selection of an officeholder." Id. at 71, 118 S.Ct. at 467. In striking down Louisiana's open primary statute, the Supreme Court held only that elections must not be "consummated" before federal election day. Id. at 72, n.4, 118 S.Ct. at 468.

With this background we turn to the challenged Texas system. Texas allows voting to begin early--seventeen days before federal election day. But the polls are open on federal election day and most voters cast their ballots that day. No election results are released until the votes are tabulated on federal election day.

Because the election of federal representatives in Texas is not decided or "consummated" before federal election day, the Texas scheme is not inconsistent with the federal election statutes as interpreted by the court in Foster.

VIP argues, however, that Foster does not control this case because Foster was not concerned with voting that began too early but rather with voting that ended too early, and its definition of "election" was devised to resolve that dispute. For the reasons that follow, we conclude that the Court would not alter its definition of "election" to require that states begin their federal election on federal election day.

First, the plain language of the statute does not require all voting to occur on federal election day. All the statute requires is that the election be held that day. Foster teaches us that "election" means "the combined actions of voters and officials meant to make a final selection of an office holder." 522 U.S at 71, 118 S.Ct. at 467. Allowing some voters to cast votes before

5

election day does not contravene the federal election statutes because the final selection is not made before the federal election day. Second, this conclusion is consistent with the Supreme Court's refusal to give a hyper-technical meaning to "election" and its refusal to "[pare] the term 'election' in § 7 down to the definitional bone . . . ." Id. at 72, 118 S.Ct. at 467. We are satisfied that our conclusion is consistent with a plain, common sense reading of the language of § 7, the same approach the Court followed in Foster to interpret the statute.

Third, the Court in Foster recognized that some acts pertaining to the election of federal officials would be performed on days other than the federal election day in violation of § 7:

> While true that there is room for argument about just what may constitute the final act of selection within the meaning of the law, our decision does not turn on any nicety in isolating precisely what acts a State must cause to be done on federal election day (and not before it) in order to satisfy the statute. Without paring the term "election" in § 7 down to the definitional bone, it is enough to resolve this case to say that a contested selection of candidates for a congressional office that is concluded as a matter of law before the federal election day . . . clearly violates § 7.

Id. (emphasis added).

We read the above language as a clear signal that contrary to VIP's argument, some acts associated with the election may be conducted before the federal election day without violating the federal election statutes.

Further, we cannot logically hold that Texas' system of unrestricted advanced voting violates federal law without also

6

finding that absentee balloting--which occurs in every state-- violates federal law.

We do not believe that Congress would have allowed absentee balloting to occur under state laws if it attached the meaning to the federal election day statutes urged by VIP. More than a century ago, some states began to allow absentee voting, and all states currently provide for it in some form, Edward B. Moreton, Jr., <u>Voting by Mail</u>, 58 S.Cal. L. Rev. 1261, 1261-62 (1985); yet Congress has taken no action to curb this established practice. We are unable to read the federal election day statutes in a manner that would prohibit such a universal, longstanding practice of which Congress was obviously well aware.

More recent legislation buttresses our conclusion that Congress looks with favor on absentee voting. Congress has enacted at least three statutes authorizing absentee balloting before election day.[4] In the Voting Rights Act Amendments of 1970, 42 U.S.C. § 1973aa-1, Congress emphasized the importance of access to voting:

> (a) The Congress hereby finds that the . . . lack of sufficient opportunities for absentee registration and absentee balloting in presidential elections (1) denies or abridges the inherent constitutional right of citizens to vote for their President and Vice-President . . . .

Further, Congress has not only acknowledged but <u>required</u>

---

[4]The Voting Rights Act Amendments of 1970, 42 U.S.C. § 1973aa-1; the 1984 Voting Accessibility for the Elderly and Handicapped Act, 42 U.S.C. § 1973ee et seq; and the Uniformed and Overseas Citizens Absentee Voting Act of 1986, 42 U.S.C. § 1973ff et seq.

7

absentee voting in certain circumstances. Sections 1973aa-1 (d),(e), (f) of the Voting Rights Act Amendments of 1970 require that citizens be allowed to vote by absentee ballot in Presidential elections on or before the day of the election.[5] Title 42 U.S.C. § 1973ee-3(c) requires the chief election officer of each state to "provide public notice, calculated to reach elderly and handicapped voters, of . . . the procedures for voting by absentee ballot . . . ." The Uniformed and Overseas Citizens Absentee Voting Act (the "UOCAVA"), 42 U.S.C. § 1973ff-1, requires states to accept absentee ballots in federal elections from certain voters: "each State shall - (1) permit absent uniformed services voters and overseas voters to use absentee registration procedures and to vote by absentee ballot in general, special, primary, and runoff elections for Federal office . . . ."

### B.

Finally, we cannot conceive that Congress intended the federal election day statutes to have the effect of impeding citizens in exercising their right to vote. The legislative history of the statutes reflects Congress's concern that citizens be able to exercise their right to vote. See CONG. GLOBE, 42d Cong., 2d Sess. 3407-3408 (1872). Also, the Texas early voting system does not foster either of the primary evils identified by Congress as

---

[5][E]ach State shall provide by law for the casting of absentee ballots for the choice of electors for President and Vice President...by all duly qualified residents of such State who may be absent from their election district...on the day such election is held...." 42 U.S.C. § 1973aa-1(d).

8

reasons for passing the federal statutes: "distortion of the voting process threatened when the results of an early federal election in one State can influence later voting in other States, and . . . the burden on citizens forced to turn out on two different election days to make final selections of federal officers in presidential election years . . . ." <u>Foster</u>, 522 U.S. at 73, 118 S.Ct. at 468. The challenged Texas statutes encourage voting by providing Texas voters with more opportunities to vote.  Also, Texas law makes it illegal for election officers to reveal any election results before the polls close on election day.  Tex. Elec. Code §§ 61.007 & 81.002.

In short, the Texas Early Voting statutes further the important federal objective of reducing the burden on citizens to exercise their right to vote by allowing them to vote at a time convenient to them, without thwarting other federal concerns.

IV.

For the above reasons, we conclude that Sections 81.001, 82.005, and 85.001 of the Texas Election Code are not preempted by federal law.  We therefore affirm the order of the district court.

AFFIRMED.