# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

MICHAEL MENNELLA and THE HONORABLE GERALD W. HOCKER,

        Plaintiffs,

        v.

THE HONORABLE ANTHONY J. ALBENCE, in his official capacity as State Election Commissioner, and STATE OF DELAWARE DEPARTMENT OF ELECTIONS,

        Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

C.A. No. S23C-03-014 MHC

## OPINION AND ORDER
Submitted: February 05, 2024
Decided: February 23, 2024

*Upon Defendants Motion to Dismiss,*
**DENIED.**
*Upon Plaintiffs Request for Declaratory Judgment,*
**GRANTED.**

M. Jane Brady, Esquire, BRADY LEGAL GROUP, LLC, Lewes, Delaware, 19958, Noel H. Johnson, Esquire, Pro Hac Vice, Public Interest Legal Foundation, Alexandria, Virginia, 22314, *Attorneys for Plaintiffs.*

Zi-Xiang Shen, Esquire, Deputy Attorney General, Department of Justice, Wilmington, Delaware, 19801, *Attorney for Defendants.*

**CONNER, J.**

# INTRODUCTION

Before the Court is the motion of the Honorable Anthony J. Albence in his official capacity as State Election Commissioner and the State of Delaware Department of Elections (collectively "Defendants") to dismiss Michael Mennella and the Honorable Gerald W. Hocker's (collectively "Plaintiffs") Amended Complaint filed in this Court on June 16, 2023.

Plaintiffs' Amended Complaint brings forth two claims. First, Plaintiffs allege that 15 *Del. C.* § 5402 of the Delaware Code (Delaware's "Early Voting Statute") violates Article V, Section 1 of the Delaware Constitution. Second, Plaintiffs allege that 15 *Del. C.* § 5503(k) of the Delaware Code (Delaware's "Permanent Absentee Voting Statute") violates Article V, Section 4A of the Delaware Constitution.

Plaintiffs seek a declaratory judgment that both Delaware's Early Voting Statute and Permanent Absentee Voting Statute violate the Delaware Constitution. They, additionally, seek reasonable attorney's fees, expenses, costs, and any other relief this Court deems just and proper.

Defendants' Motion to Dismiss has four (4) primary arguments. Defendants argue that: (1) Plaintiffs failed to properly transfer this case pursuant to 10 *Del. C.* § 1092; (2) Plaintiffs lack standing to bring these claims; (3) Plaintiffs' undue delay

2

bars the claims from being heard, and finally that; (4) Plaintiffs fail to state a claim that the challenged laws are unconstitutional.

For the reasons set forth below, the Court will **DENY** Defendants' motion to dismiss and **GRANT** Plaintiffs request for declaratory judgment.

## PROCEDURAL HISTORY

On February 24, 2022, Michael Mennella filed a Verified Complaint for Declaratory Judgment and Injunctive Relief in the Court of Chancery. The pendency of *Albence v. Higgin*,[1] another challenge to Delaware's election-laws, suspended consideration of that case for nearly a year.[2] On January 19, 2023, the Court of Chancery ultimately determined that equitable relief was not required to resolve this case and dismissed it for lack of jurisdiction.[3] The Court of Chancery's Order ("Chancery Order") dismissed the case "in its entirety with leave to transfer subject to 10 *Del. C.* § 1902."[4]

On January 30, 2023, Mennella filed an Application for Certification of Interlocutory Appeal of the Chancery Order. The application was opposed by

---

[1] 295 A.2d 1065 (Del. 2022).
[2] *Mennella v. Albence*, 2023 WL 309042, at *2 (Del. Ch. Jan. 19, 2023), appeal refused, 292 A.3d 111 (Del. 2023).
[3] *Id.*
[4] *Id.*

3

Defendants, refused by the Court of Chancery, and on February 23, 2023, ultimately refused by the Delaware Supreme Court.

At this point it could be presumably said that Mennella had lost the procedural battle, but he had not yet lost the war. On March 16, 2023, Mennella filed the Chancery Order dismissing his action with leave to transfer subject to 10 *Del. C.* § 1092 in this Court. On April 12, 2023, this Court granted Mennella leave to amend his complaint, which he did.

Mennella filed the Amended Complaint on June 16, 2023, adding the Honorable Gerald W. Hocker, a State Senator representing Delaware's 20th Senate District ("Senator Hocker"), as an additional plaintiff. Predictably, Defendants moved to dismiss the Amended Complaint and that is the motion currently before the Court. Parties have filed written briefs on the issues and on January 29, 2024, oral argument was held on the matter.

## ANALYSIS

### I.   Senator Hocker has standing as a candidate to pursue these claims.

"Standing is a threshold question that must be answered by a court affirmatively to ensure that the litigation before the tribunal is a 'case or controversy'

that is appropriate for the exercise of the court's judicial powers."[5]  "The issue of standing is concerned only with the question of who is entitled to mount a legal challenge and not with the merits of the subject matter of the controversy."[6]  "The party invoking the jurisdiction of a court bears the burden of establishing the elements of standing."[7]

*Higgin* presented a similar constitutional challenge to Delaware's election statutes.  In *Higgin,* the Supreme Court of the State of Delaware found that Michael Higgin had standing to challenge the validity of two Delaware election statutes that he claimed violated the Delaware Constitution by virtue of his status as a candidate for public office.[8]  The Court explained, "it seems nearly self-evident that a candidate who runs the risk of defeat because of the casting of ballots that are the product of an extra-constitutional statute has standing to challenge that statute."[9]

Senator Hocker has over 20 years of legislative service in the Delaware General Assembly.[10]  He served in the State House of Representatives from 2002 to 2012 and as the House Minority Whip from 2010 to 2012.[11]  He was elected to

---

[5] *Dover Hist. Soc'y v. City of Dover Plan. Comm'n*, 838 A.2d 1103, 1110 (Del. 2003).
[6] *Albence v. Higgin*, 295 A.3d 1065, 1086 (Del. 2022) (citing *Stuart Kingston*, Inc. *v. Robinson*, 596 A.2d 1378, 1382 (Del. 1991)).
[7] *Higgin*, 295 A.3d 1065, 1086 (citing *Dover Hist. Soc'y*, 838 A.2d 1103, 1109).
[8] *Higgin*, 295 A.3d 1065, 1087.
[9] *Id.*
[10] Gerald W. Hocker (R), Delaware General Assembly, *available at* https://legis.delaware.gov/AssemblyMember/152/Hocker (last visited February 22, 2024).
[11] *Id.*

5

represent the 20th Senate District in 2012 and became the Senate Minority Leader in 2018, a position he currently holds.[12]  Moreover, it is stated in Plaintiffs' Amended Complaint that the incumbent Senator intends to run to maintain his Senate seat in future elections.[13]

I am satisfied that an incumbent State Senator who expressed his intention to seek reelection in a lawsuit, a matter of public record, is in fact a candidate.  As such I find Senator Hocker has established standing as a candidate under *Higgin* to bring these claims.  Senator Hocker has standing with regards to both claims brought by Plaintiffs, therefore no further analysis with regards to Michael Mennella is necessary.

## II.     Plaintiffs Effectively Transferred this matter under 10 *Del. C.* § 1902.

Vice Chancellor Glasscock's January 19, 2023, Order (the aforementioned "Chancery Order") dismissed Mennella's complaint in the Court of Chancery "with leave to transfer subject to 10 *Del. C.* § 1902."[14]  Defendants argue that this Court lacks jurisdiction to hear these claims because Mennella failed to properly transfer

---

[12] Gerald W. Hocker (R), Delaware General Assembly, *available at* https://legis.delaware.gov/AssemblyMember/152/Hocker (last visited February 22, 2024).
[13] Pls. Amended Compl. ℙ 9.
[14] *Mennella*, 2023 WL 309042, at *2.

6

this matter from the Court of Chancery to the Superior Court pursuant to 10 *Del. C.* § 1902.

Section 1902 "is a remedial statute designed to prevent a case from being totally ousted because it was brought in the wrong court."[15]  The statute provides that "[n]o civil action, suit or other proceeding brought in any court of this State shall be dismissed solely on the ground that such court is without jurisdiction of the subject matter, either in the original proceeding or on appeal."[16]  Further, it commands that it "shall be liberally construed to permit and facilitate transfers of proceedings between the courts of this State in the interests of justice."[17]

Section 1902 has three primary statutory requirements that must be satisfied by the transferring party "within 60 days after the order denying jurisdiction of the first court has become final…."[18]  The transferring party must: (1) file a written election of transfer; (2) discharge all costs accrued in the first court; and (3) make the usual deposit for costs in the second court.[19]

It is uncontested that Mennella both discharged all costs accrued in the Court of Chancery and made the usual deposit in this Court.  However, Defendants argue

---

[15] *Wilmington Trust Co. v. Schneider*, 342 A.2d 240, 242 (Del. 1975).
[16] 10 *Del. C.* § 1902.
[17] *Id.*
[18] *Id.*
[19] *Id.*

7

that because Mennella failed to file a written election of transfer with the Court of Chancery their § 1902 transfer to this Court is improper. As a result of that improper transfer Defendants contend this Court lacks subject matter jurisdiction over these claims and they must be dismissed with prejudice.

This Court is satisfied that the interests of justice will be served by allowing Plaintiffs' claims to be heard on their merits. In the letter opinion accompanying the Chancery Order, Vice Chancellor Glasscock wrote:

> Nothing in this Letter Opinion should be read to imply that the Plaintiff's allegations are inconsequential. In fact, they challenge the enforceability of acts of the General Assembly as violative of the Delaware Constitution, in the single arena–voting rights–most fundamental to a functioning democracy. These are important issues; they are also issues outside the jurisdiction of this Court. Accordingly, this matter is dismissed with leave to transfer to the Superior Court.[20]

The Vice Chancellor clearly understood the importance of this matter being decided on its' merits before dismissing it for lack of jurisdiction in the Court of Chancery. These issues strike deep at the heart of our system of constitutional self-governance and this Court does not take them lightly.

Section 1902's written election of transfer requirement exists to provide notice to the initial court of the pending transfer to ensure that court delivers:

---

[20] *Mennella*, 2023 WL 309042, at *2.

> All or part of the papers filed, or copies thereof, and a transcript of the entries, in the court where the proceeding was originally instituted… in accordance with the rules or special orders of such court, by the prothonotary, clerk, or register of that court to the prothonotary, clerk or register of the court to which the proceeding is transferred.[21]

The Court of Chancery was clearly aware of the transfer as evidenced by the case file being transferred to this Court. Both courts involved have recouped or been properly paid all costs owed by Mennella. Therefore, I find Mennella's failure to file this written election of transfer in the Court of Chancery to be untidy but harmless.

In light of the statutory command for a liberal construction of § 1902, I find in this instance the interests of justice favor hearing critical issues that implicate the Delaware Constitution and the voting rights of our citizenry on their merits. Therefore, Plaintiffs admitted failure to file a written transfer of elections is insufficient to strip this Court of subject matter jurisdiction over these claims.

## III. Plaintiffs' claims are not waived or time-barred.

Defendants argue that Plaintiffs have waived their claims because they declined to challenge Delaware's Early Voting Statute (enacted in 2019) and Permanent Absentee Voting Statute (enacted in 2010) at the time they were enacted.

---

[21] 10 *Del. C.* § 1902.

9

Defendants further argue that even if waiver doesn't bar Plaintiffs' claims, Delaware's three-year statute of limitations bars the claim against Delaware's Permanent Absentee Voting Statute under 10 *Del. C.* § 8106.

### A. Plaintiffs' claims have not been waived.

Defendants argue that Plaintiffs waived their right to challenge these statutes because they "fully acquiesced into these statutory schemes" and "sat on any purported rights."[22] Defendants further claim that allowing this suit to proceed after such undue delay would prejudice both the Department of Elections and the thousands of voters who would be disenfranchised if these laws are struck down.

Defendants' position is essentially if unconstitutional laws are not challenged at the time of their enactment, the right to challenge them is waived. This position on waiver ignores several landmark United States Supreme Court decisions overturning longstanding state statutes, constitutional provisions, and policies that unconstitutionally violated the fundamental rights of citizens.[23] One such decision has its roots in Delaware.

---

[22] Tr. at 5.

[23] *Harper v. Virginia State Bd. of Elections*, 383 U.S. 663, 86 S. Ct. 1079, 16 L. Ed. 2d 169 (1966) (Held Virginia's long standing poll tax was unconstitutional); *Loving v. Virginia*, 388 U.S. 1, 87 S. Ct. 1817, 18 L. Ed. 2d 1010 (1967) ("…held that miscegenation statutes adopted by Virginia to prevent marriages between persons solely on basis of racial classification violate equal protection and due process clauses of Fourteenth Amendment."); *United States v. Virginia*, 518 U.S. 515, 116 S. Ct. 2264, 135 L. Ed. 2d 735 (1996) ("Virginia's categorical exclusion of women from the educational opportunities VMI provides denies equal protection to women."); *Lawrence v. Texas*,

Until 1952 Article X, Section 2 of the Delaware Constitution of 1897 and Paragraph 2631, Section 9 of the Revised Code of Delaware of 1935 explicitly required the segregation of Delaware's public schools.[24] In *Gebhart v. Belton* the Delaware Supreme Court affirmed an Opinion of the Chancery Court finding those provisions unconstitutional under the 14th Amendment of the Federal Constitution.[25] This suit was consolidated with several others from across the nation and ultimately affirmed in the milestone decision *Brown v. Bd. of Ed. of Topeka, Shawnee Cnty., Kan.*[26] The challenge to Delaware's system of public school segregation in *Gebhart* took place years after the enactment of the unconstitutional statute and over half a century after Article X, Section 2 of the Delaware Constitution of 1897 took effect. Still, the Court of Chancery, Delaware Supreme Court, and United States Supreme

---

539 U.S. 558, 123 S. Ct. 2472, 156 L. Ed. 2d 508 (2003) ("…Texas statute making it a crime for two persons of the same sex to engage in certain intimate sexual conduct was unconstitutional,"); *Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 130 S. Ct. 876, 175 L. Ed. 2d 753 (2010) (…federal statute barring independent corporate expenditures for electioneering communications violated First Amendment,); *Obergefell v. Hodges*, 576 U.S. 644, 135 S. Ct. 2584, 192 L. Ed. 2d 609 (2015) ("The right to marry is a fundamental right inherent in the liberty of the person, and under the Due Process and Equal Protection Clauses of the Fourteenth Amendment couples of the same-sex may not be deprived of that right and that liberty," striking down several longstanding state prohibitions on same-sex marriage); *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 143 S. Ct. 2141, 216 L. Ed. 2d 857 (2023) (Held the longstanding practice of considering race as a factor in admissions at private and public institutions of higher learning unconstitutional).

[24] *Gebhart v. Belton*, 91 A.2d 137, 140-141 (Del. 1952), *aff'd sub nom. Brown v. Bd. of Educ. of Topeka, Kan.*, 349 U.S. 294 (1955).

[25] 91 A.2d 137, 137.

[26] 347 U.S. 483, n.1 (1954), *supplemented sub nom. Brown v. Bd. of Educ. of Topeka, Kan.*, 349 U.S. 294 (1955).

Court did not find the plaintiffs had waived their rights to challenge the unconstitutional laws.

Defendants implore the Court not to "give any credit to Plaintiff's invocation of segregated school and poll taxes."[27] They ask the Court to ignore *Brown* and *Harper* because the race-based laws challenged therein were obviously wrong, and in Plaintiffs' opinion, the presently challenged election laws are obviously right.

Simply put, Defendants' waiver argument is myopic. The purported wisdom of a statute is beyond the purview of the judiciary. When assessing the constitutionality of a statute it is not the role of the Court to determine whether a challenged statute is good or bad, right or wrong, or wise or unwise. That is the role of the General Assembly. "The Court's role—indeed, our duty—is to hold the challenged statutory enactments up to the light of our Constitution and determine whether they are consonant or discordant with it."[28] A citizen's right to challenge an allegedly unconstitutional statute is not waived by the mere passage of time, especially when the alleged constitutional violation is "in the single arena … most fundamental to a functioning democracy," voting rights.[29]

---

[27] Reply Br. in Further Support of Defs. Mot. to Dismiss at 12.
[28] *Higgin*, 295 A.3d 1065, 1097.
[29] *Mennella*, 2023 WL 309042, at *2.

**B. Plaintiffs' claim against Delaware's Permanent Absentee Voting Statute is not barred by 10 *Del. C.* § 8106.**

The relevant portion of 10 *Del. C.* § 8106 titled "[a]ctions subject to 3-year limitation" reads, "…no action based on a statute … shall be brought after the expiration of 3 years from the accruing of the cause of such action."[30]

Plaintiffs' claim is not based on a statute but instead based on the current Constitution of the State of Delaware. Plaintiffs' action challenges the constitutionality of Delaware's Permanent Absentee Voting Statute, it does not seek relief under it, therefore 10 *Del. C.* § 8106 is inapplicable. As such, Plaintiffs' Constitutional claim against Delaware's Permanent Absentee Voting Statute is not barred by the three-year statute of limitations set forth in 10 *Del. C.* § 8106.

**IV. Plaintiffs not only state a claim upon which relief can be granted, they demonstrate by clear and convincing evidence that the challenged statutes violate the Delaware Constitution.**

The standards governing a motion to dismiss for failure to state a claim under Delaware Superior Court Civil Rule 12(b)(6) are well settled. "[A] complaint will not be dismissed for failure to state a claim upon which relief can be granted unless it appears to a certainty that the plaintiff could not recover under any reasonably conceivable set of circumstances susceptible of proof."[31]

---

[30] 10 *Del. C.* § 8106.
[31] *Klein v. Sunbeam Corp.*, 94 A.2d 385, 391 (Del. 1952).

The standards governing the rebuttal of a statute's presumption of constitutionality are similarly well settled. "One who seeks to invalidate a statute on constitutional grounds has the burden of rebutting this presumption of validity and constitutionality which accompanies every statute. Constitutional prohibitions to legislative action must be shown by clear and convincing evidence."[32] For the following reasons I find not only that Plaintiffs have stated claims upon which relief can be granted, but that they have proven by clear and convincing evidence that the challenged statutes violate the Delaware Constitution.

## A. Relevant Interpretative Principals

In reaching its decision in *Higgin*, the Delaware Supreme Court laid out the "well-settled interpretative principles" by which Delaware Courts conduct an analysis of constitutional claims.[33] These principals serve to protect the separation of powers in our government, ensuring a balance between the authority of the Constitution, General Assembly, and Judiciary.

The first principal is that enactments of the Delaware General Assembly enjoy a presumption of constitutionality.[34] "All reasonable doubts as to the validity of a law must be resolved in favor of the constitutionality of the legislation."[35] The

---

[32] *Higgin*, 295 A.3d 1065, 1088-1089 (internal citations omitted).
[33] *Higgin*, 295 A.3d 1065, 1088.
[34] *Id.*
[35] *Id.* at 1089 (internal citations omitted).

challenging party bears the burden of demonstrating by clear and convincing evidence that an enactment of the General Assembly is unconstitutional.[36]

Despite this deference to the General Assembly, "when such a construction discerns a conflict between the Constitution and a statute, the Constitution will prevail."[37]  Delaware Courts adhere to the longstanding constitutional precedent set in Justice Marshall's seminal 1803 decision *Marbury v. Madison* that "an act of the legislature repugnant to the constitution is void."[38]

### B. 15 *Del. C.* § 5402 Delaware's Early Voting Statute violates Article V, Section 1 of the Delaware Constitution.

### 1. Delaware's Early Voting Statute impermissibly expands when general elections are held beyond the constitutionally designated day.

Article V, Section 1 of the Constitution of the State of Delaware is titled "[t]ime and manner of holding general election."[39]  In its relevant portion it states, "[t]he general election shall be held biennially on the Tuesday next after the first Monday in the month of November,"[40]  Delaware's Early Voting Statute permits a voter to "vote in person during at least 10 days before an election, up to and including

---

[36] *Higgin,* 295 A.3d 1065, 1089.
[37] *Evans v. State*, 872 A.2d 539, 553 (Del. 2005).
[38] *Marbury v. Madison*, 5 U.S. 137, 177 (1803) (quoted in *Higgin,* 295 A.3d 1065, 1089).
[39] Del. Const. art. V, § 1.
[40] *Id.*

the Saturday and Sunday immediately before an election."[41] The conflict between these two passages is obvious. Our Constitution enumerates the one day an election shall be held biennially and the Early Voting Statute allows for voting at least 10 days before that date.

As stated above when such a conflict exists the "Constitution will prevail."[42] Article V, Section 1 has been interpreted by this Court to "mean[] what it plainly says."[43] Therefore, "the general election shall be held biennially on the Tuesday next after the first Monday in the month of November."[44] The word "shall" commands the general election be held on that specific day enumerated in the text. Our Constitution provides only one such day, not any day or series of days the General Assembly sees fit. "To give it a different meaning would be, in the court's opinion, judicial legislation."[45]

Defendants argue that the word election as it appears in Article V, Section 1 does not mean what it plainly says. They suggest instead, such a plain reading ignores precedent set by the United States Supreme Court in *Foster v. Love*, which defined an election as "the combined actions of voters and officials meant to make

---

[41] 15 *Del. C.* § 5402.
[42] *Higgin*, 295 A.3d 1065, 1089.
[43] *State v. Hart*, 129 A. 691, 694 (Del. Super. Ct. 1925).
[44] Del. Const. art. V, § 1.
[45] *Hart*, 129 A. 691, 694.

a final selection of an officeholder."[46]  Defendants use this altered meaning of "election" to suggest that the day the "election shall be held" is merely the last day which votes can be cast, not the only day when votes may be cast.  I find this argument unavailing.

Ironically, *Foster* invalidated a form of early voting, Louisiana's "Open Primary."[47]  The Open Primary was an election held in October of a federal election year, weeks before the federal biennial election day set by Congress.[48]  In the Open Primary "all candidates, regardless of party, appear on the same ballot and all voters are entitled to vote.  If a candidate for a given office receives a majority at the open primary, the candidate 'is elected' and no further act is done on federal election day to fill that office."[49]

Writing for the Court, Justice Souter found that Louisiana's Open Primary ran afoul of federal election statutes.[50]  In interpreting the relevant federal election statutes to reach this conclusion Justice Souter wrote, "*When the federal statutes speak of* "the election" of a Senator or Representative, they plainly refer to the

---

[46] 522 U.S. 67, 71 (1997).
[47] *Foster*, 522 U.S. 67, 67.
[48] *Id.*
[49] *Id.*
[50] *Id.* at 69.

combined actions of voters and officials meant to make a final selection of an officeholder"[51] (emphasis added).

This analysis does not require an interpretation of federal statutes. Instead, it requires an interpretation of our own State Constitution and the enactments of our General Assembly. If the matter before this Court required an interpretation of federal election statutes, I would be bound by *Foster* and its definition of "the election", but that is not the case. The definition assigned to "the election" in *Foster* is not the definition of "general election" as it appears in Article V, Section 1 and this Court is not bound by it.

As stated above, Delaware law requires this Court to interpret Article V, as meaning what it plainly says.[52] "[Article V, Section 1] is so clear and complete that no statute, we think, can be invoked to aid in its interpretation. It means what it plainly says, no matter what the effect may be."[53] This required plain reading of Article V, commands the general election be held "biennially on the Tuesday next after the first Monday in the month of November."[54] Any enactment of the General Assembly that provides for casting ballots on other days than that day enumerated

---

[51] *Foster*, 522 U.S. 67, 71.
[52] *Hart*, 129 A. 691, 694.
[53] *Id.*
[54] Del. Const. art. V, § 1.

by Article V, Section 1, unless permitted elsewhere Article V, runs afoul of and is inconsistent with the Constitution.

> **2. Early Voting is not a mean, method, or instrument that secures the secrecy or independence of the voter, preserves the freedom or purity of elections, or prevents fraud corruption and intimidation thereat.**

Article V, Section 1 also provides that "the General Assembly may by law prescribe the means, methods and instruments of voting so as best to secure secrecy and the independence of the voter, preserve the freedom and purity of elections and prevent fraud, corruption and intimidation thereat."[55]   Defendants claim this language empowers the General Assembly with the authority to enact the Early Voting Statute.  They argue, the Early Voting Statute is an "additional manner of voting in connection with the general election" that allows votes to be cast "for a period prior to the constitutionally designated general election day."[56]

I agree in part.  Interpreting Article V, Section 1 plainly as required,[57] it is obvious that Early Voting is in fact a manner of voting.  While true that Article V, Section 1 permits the General Assembly to enact voting laws, those laws must be enacted "so as best to secure secrecy and the independence of the voter, preserve the freedom and purity of elections and prevent fraud, corruption and intimidation

---

[55] Del. Const. art. V, § 1.
[56] Reply Br. in Further Support of Defs. Mot. to Dismiss 17-18.
[57] *Hart*, 129 A. 691, 694.

thereat."[58]   When directly asked at oral argument how the Early Voting Statute accomplishes this mandate Defendants' replied by saying "early voting itself does not negate that provision.  Early voting still allows voters – I think it allows voters to exercise their independence and to fully – in their full ability to participate in the election…."[59]

Ultimately, Defendants' take the position that the Early Voting Statute is compliant with our Constitution because it is not less secure than traditional voting on election day.  Defendants fail to articulate how Delaware's Early Voting Statue accomplishes Article V, Section 1's mandate to "secure secrecy and the independence of the voter, preserve the freedom and purity of elections and prevent fraud, corruption and intimidation threat."[60]  While early voting is clearly a method of voting, the Early Voting Statute was not enacted "so as best to" nor does it achieve the ends required of a method of voting enacted by the General Assembly under Article V, Section 1.  The Early Voting Statute extends beyond the limited grant of authority provided to the General Assembly under Article V, Section 1 and is therefore not constitutionally permissible.

---

[58] Del. Const. art. V, § 1.
[59] Tr. at 26-27.
[60] Del. Const. art. V, § 1.

20

**C. 15 *Del. C.* § 5503(k) Delaware's Permanent Absentee Voting Statute violates Article V, Section 4A of the Delaware Constitution.**

"At the founding of 'The Delaware State', our constitution required voters to cast ballots in person."[61]  This requirement remained in effect until 1943 when the 108th Session of the General Assembly amended the Delaware Constitution adding Section 4A to Article V.[62]  Titled "General Laws for Absentee Voting" Section 4A has been amended several times since 1943 with each amendment typically enumerating a new class of voter who may participate in absentee voting.[63]  "[T]he General Assembly must take all possible precautions against fraudulent abuse of the privilege when enacting an absentee voters' law."[64]

Today Section 4A provides:

> The General Assembly shall enact general laws providing that any qualified elector of this State, duly registered, who shall be unable to appear to cast his or her ballot at any general election at the regular polling place of the election district in which he or she is registered, either because of being in the public service of the United States or of this State, or his or her spouse or dependents when residing with or accompanying him or her, because of the nature of his or her business or occupation, because of his or her sickness or physical disability, because of his or her absence from the district while on vacation, or because of the tenets or teachings of his or her religion, may cast a ballot at such general election to be counted in such election district.[65]

---

[61] *Higgin*, 295 A.3d 1065, 1071.
[62] Randy J. Holland, *The Delaware State Constitution* 215 (2d ed. 2017).
[63] *Id.* at 216.
[64] *Id.* at 215.
[65] Del. Const. art. V, § 4A.

In its relevant portion Delaware's Permanent Absentee Voting Statute permits certain voters who fall within categories specified elsewhere in Chapter 55 to apply in writing for permanent absentee status.[66] The categories of persons permitted to apply for permanent absentee status is not at issue.[67] Instead, the constitutional issue raised by Plaintiffs is the creation of a permanent absentee voter status and the Permanent Absentee Voting Statue's command that the Department of Elections "shall automatically send an absentee ballot to each person in permanent absentee status for each election in which the person is entitled to vote."[68]

Plaintiffs allege this enactment of the General Assembly violates Section 4A of the Delaware Constitution by "impermissibly granting eligibility to vote by absentee ballot indefinitely…legislat[ing] outside the bounds of [Section] 4A's text, and effectively enlarging the pool of eligible absentee voters…."[69] For the following reasons the Court agrees with Plaintiffs.

---

[66] 15 *Del. C.* 5503(k).
[67] It appears that the General Assembly was well aware of art. V, Section 4A when drafting Delaware's Permanent Absentee Voting Statute. The categories of persons Delawares Permanent Absentee Voting Statute permit to apply for permanent absentee status all fall within categories permitted to participate in absentee voting by Article V, Section 4A. Underscoring that it is not the category of voter permitted participate in permanent absentee voting that creates a constitutional issue with the statute, but the creation of a permanent absentee voter status itself.
[68] 15 *Del. C.* 5503(k).
[69] Pls. Br. in Opp'n to Defs. Mot. to Dismiss at 32.

Section 4A allows the General Assembly to enact laws that permit qualified registered voters, "who shall be unable to appear to cast his or her ballot at *any general election*" to "cast *a* ballot at *such* general election to be counted in such election district"[70] (emphasis added). To preserve the sense of Article V, Section 4A, it only makes sense that "such" refers to the nearest reasonable antecedent "any general election."[71] Further, the use of the singular "a" before the singular "ballot" demonstrates that only one absentee ballot may be cast for any such general election at which the voter shall be unable to appear. In other words, Section 4A allows a voter to participate in absentee voting at only the election at which they are unable to appear.

This grammatical analysis demonstrates that Delaware's Permanent Absentee Voting Statute is clearly at odds with Article V, Section 4A the Delaware Constitution. As it stands the Permanent Absentee Voting Statute would allow a voter who may be unable to appear at an upcoming election because of a temporary illness, such as the flu, to check a box on a form and automatically receive absentee ballots in all future general elections regardless of whether or not that voter is still ill at the time of those future elections. At each future election the Department of

---

[70] Del. Const. art. V, § 4A.
[71] Antonin Scalia & Bryan A. Garner, *Reading Law the Interpretation of Legal Texts* 146 (2012) (quoting *Sim's Lesee v. Irvine*, 3 U.S. 425 (1799) "The rule is, that 'such' applies to the last antecedent, unless the sense of that passage requires a different construction."; see also *Barnhart v. Thomas*, 540 U.S. 20, 27-28 (2003)).

Elections requires no further affirmation that the voter is still in a situation that would require them to cast an absentee ballot. In the words of Defendants' Counsel "you are not making any sort of statement regarding permanent absentee voting when you return the absentee ballot…if you're absentee, you are absentee."[72]

Article V, Section 4A limits absentee voting to only such general election where the voter cannot cast a ballot in person for a constitutionally enumerated reason. By granting indefinite absentee voting to those who are unable to vote in a single election, Delaware's Permanent Absentee Voting Statute impermissibly extends beyond the limited authority granted to the General Assembly by our Constitution. Therefore, although likely well intentioned, I find Delaware's Permanent Absentee Voting Statute violative of the Article V, Section 4A of the Delaware Constitution.

## CONCLUSION

This decision is not made lightly, and it should be noted that the spirit and goals of the challenged legislation are not what are being ruled on today. Nothing in this Opinion and Order should be read to suggest that polices intended to support the enfranchisement and inclusion of voters in Delaware are *per se* unconstitutional. "The Court's role—indeed, our duty—is to hold the challenged statutory enactments

---

[72] Tr. at 47.

up to the light of our Constitution and determine whether they are consonant or discordant with it."[73] The enactments of the General Assembly challenged today are inconsistent with our Constitution and therefore cannot stand.

Accordingly, Defendants' Motion to Dismiss and Plaintiffs' request for attorney's fees, expenses, and costs are **DENIED**.  Plaintiffs request for declaratory judgement is **GRANTED**. It is so **ORDERED.**

/s/ *Mark H. Conner*
Mark H. Conner, Judge

cc: Prothonotary

---

[73] *Higgin*, 295 A.3d 1065, 1097.