IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STATE OF ARIZONA, *Appellee*,

*v.*

CAROL HANNAH, *Appellant*.

No. 1 CA-CR 14-0424
FILED 7-28-2015

Appeal from the Superior Court in Mohave County
No. S8015CR201301355
The Honorable Derek C. Carlisle, Judge *Pro Tempore*

**REVERSED AND REMANDED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman, Chris DeRose
*Counsel for Appellee*

Law Offices of Paul Lenkowsky, Bullhead City
By Paul Lenkowsky, Virginia L. Crews
*Counsel for Appellant*

**OPINION**

Judge Kenton D. Jones delivered the opinion of the Court, in which Presiding Judge Margaret H. Downie and Judge Jon W. Thompson joined.

**J O N E S**, Judge:

**¶1**    In this appeal, we consider whether, by submitting ballots in both Arizona and Colorado's November 2010 elections, Carol Hannah "[k]nowingly vote[d] more than once at any election" in violation of Arizona Revised Statutes (A.R.S.) section 16-1016(2).[1] Because the State was required to prove Hannah cast more than one vote in a single election, and failed to present sufficient evidence to establish this fact, we reverse her conviction and remand for entry of a judgment of acquittal.

## FACTS[2] AND PROCEDURAL HISTORY

**¶2**    In October 2013, a grand jury returned an indictment against Hannah for one count of illegal voting in violation of A.R.S. § 16-1016(2), alleging she "voted in the November 2, 2010, General Election in both Mohave County, Arizona, and Adams County, Colorado." At trial, the State presented evidence that on October 18, 2010 Hannah sent a mail-in ballot to the Adams County Clerk & Recorder in the general election held in Colorado on November 2, 2010. She then cast a ballot in person at a polling place in Mohave County, Arizona, in the general election held in Arizona on November 2, 2010. No single candidate or issue appeared on both the Colorado and Arizona ballots.

**¶3**    At the close of the State's case-in-chief, Hannah moved for judgment of acquittal under Arizona Rule of Criminal Procedure 20(a). The trial court denied the motion, and the jury found Hannah guilty as charged. The court suspended imposition of sentence and placed Hannah on probation for three years. Hannah timely appealed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1), 13-4031, and 13-4033(A)(1).

---

[1]   Absent material revisions from the relevant date, we cite a statute's current version.

[2]   We view the facts in the light most favorable to upholding the jury's verdict and resolve all reasonable inferences against the defendant. *State v. Harm*, 236 Ariz. 402, 404 n.2, ¶ 2 (App. 2015) (citing *State v. Valencia*, 186 Ariz. 493, 495 (App. 1996)).

**DISCUSSION**

**¶4**      On appeal, Hannah challenges the sufficiency of the evidence to support her conviction.[3]  We review claims of insufficient evidence to determine whether "'a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  *State v. Young*, 223 Ariz. 447, 450, ¶ 12 (App. 2010) (quoting *State v. Montano*, 204 Ariz. 413, 423, ¶ 43 (2003)).  Here, Hannah was charged under subsection (2) of A.R.S. § 16-1016, which provides: "A person is guilty of a class 5 felony who . . . [k]nowingly votes more than once at any election."  The State argues the words "any election" do not require proof that votes were cast in the *same* election or for or against the *same* candidates.  The underlying issue is therefore one of statutory construction, which we review *de novo*.  *State v. Gomez*, 212 Ariz. 55, 56, ¶ 3 (2006) (citing *State v. Estrada*, 201 Ariz. 247, 250, ¶ 15 (2001)).

**¶5**      In construing a statute, "our analysis begins and ends with its plain language if it is unambiguous."  *State v. Streck*, 221 Ariz. 306, 307, ¶ 7 (App. 2009) (citing *Bentley v. Bldg. Our Future*, 217 Ariz. 265, 270, ¶ 13 (App. 2007)).  The language of A.R.S. § 16-1016(2) unambiguously criminalizes the act of voting more than once in a single election.  *See Ariz. State Democratic Party v. State*, 209 Ariz. 103, 111 n.10, ¶ 23 (App. 2004) ("find[ing] no distinction based on the use of 'any' as contrasted with 'an'" as between the constitutional phrase "influencing any election," Ariz. Const. art. 14, § 18, and the statutory phrase "influencing an election," A.R.S. § 16-919(A), in the course of interpreting the statutory prohibition against political contributions from labor unions), *vacated on other grounds*, 210 Ariz. 527 (2005).  *But see State v. Ramos*, 155 Ariz. 468, 470 (App. 1987) (noting that whether to treat the word "any" as singular or plural "depends upon the context and subject matter of the statute") (citing Black's Law Dictionary 86 (5th ed. 1979)).  The plain language is further supported by the legislative purpose of A.R.S. § 16-1016: to prevent any voter from having a greater say in the outcome of an election than any other voter by limiting each qualified person to one ballot per election.  *See* A.R.S. § 1-211(A) (directing statutes be construed consistently with the intent of the legislature); *Reynolds v. Sims*, 377 U.S. 533, 563 (1964) (rejecting as unconstitutional a state election system that did not give approximate equal weight to each vote cast); *Chavez v. Brewer*, 222 Ariz. 309, 318-19, ¶ 29 (App. 2009) (noting elections clause of the

---

[3]      Because our conclusion on this issue is dispositive, we do not address the other issues Hannah raises on appeal.  *See State v. Smith*, 198 Ariz. 568, 570, ¶ 6 (App. 2000).

Arizona Constitution provides "direction to the legislature to enact appropriate laws to secure the purity of elections and guard against electoral abuses") (citing Ariz. Const. art. 7, § 12; *Harless v. Lockwood*, 85 Ariz. 97, 100-01 (1958); and *Ahrens v. Kerby*, 44 Ariz. 337, 341 (1934)).

**¶6** The State argues the Arizona and Colorado elections held on November 2, 2010 were part of one election, relying on congressional regulations that designate a specific day to select candidates for Congress and the President in a singular, regular election. *See* 2 U.S.C. § 1 (setting the day for "the regular election held in any State" to choose Senators); 2 U.S.C. § 7 (establishing "the day for the election" of Representatives and Delegates to Congress); 3 U.S.C. § 1 (setting date for "every election" of President and Vice President).

**¶7** We recognize the elections held on the first Tuesday following the first Monday of November in every even-numbered year are sometimes referred to as "national elections" because they, collectively, include the selection of all the members of the House of Representatives and one-third of the members of the Senate. However, these state elections are held on the same day as a matter of administrative and practical convenience in an attempt "'to remedy more than one evil arising from the election of members of Congress occurring at different times in the different States.'" *Foster v. Love*, 522 U.S. 67, 73 (1997) (quoting *Ex parte Yarbrough*, 110 U.S. 651, 661 (1884)). But, within that singular time constraint, each state conducts a separate election for the selection of its Senators and Representatives as constitutionally provided. *See* U.S. Const. art. I, § 4, cl. 1 (reserving to the states the authority to prescribe the time, place, and manner of holding elections for its Senators and Representatives); *United States v. Classic*, 313 U.S. 299, 311 (1941) (stating that under the Elections Clause, "the states are given, and in fact exercise wide discretion in the formulation of a system for the choice by the people of representatives in Congress").

**¶8** Thus, the elections held in Arizona and Colorado on November 2, 2010, although occurring on the same day, were separate and discrete elections, held in two different states. While the evidence is sufficient to permit a finding that Hannah cast a ballot in both Arizona and Colorado on November 2, 2010, the evidence is insufficient to show Hannah voted "more than once in any election," such that her vote received more weight than that of any other citizen, where there is no evidence that any candidate appeared on both ballots and 2010 was not a presidential election year. The evidence is therefore insufficient to support a conviction for illegal voting in violation of A.R.S. § 16-1016(2), and we reverse the

conviction. *See* Ariz. R. Crim. P. 20(a) ("[T]he court shall enter a judgment of acquittal of one or more offenses charged . . . if there is no substantial evidence to warrant a conviction."); *State v. Mathers*, 165 Ariz. 64, 71 (1990) ("Where there is a complete absence of probative facts to support a conviction, we will reverse a trial court's denial of a Rule 20 motion [for judgment of acquittal].") (citing *State v. Wiley*, 144 Ariz. 525, 539 (1985)).

**¶9**        Although we reverse Hannah's conviction, we do not mean to imply that voting in elections held in two separate states on the same date is otherwise proper or lawful. Such conduct raises serious questions regarding whether Hannah was a qualified voter in both Arizona and Colorado in November 2010. However, the State does not dispute Hannah was qualified to vote in the Arizona election, and Hannah was not charged with casting a vote while not qualified to do so. *See* A.R.S. § 16-1016(1) ("A person is guilty of a class 5 felony who . . . [n]ot being entitled to vote, knowingly votes."). Whether Hannah was qualified to cast a ballot in the Colorado election is a matter for Colorado to address in the interpretation and application of its own law. We likewise express no opinion as to whether Hannah's conduct constitutes a violation of federal law. *See, e.g.,* 52 U.S.C. § 10307(e) (prohibiting voting more than once in a federal election).

**CONCLUSION**

**¶10**        For the foregoing reasons, we reverse Hannah's conviction and sentence for illegal voting and remand with instructions to the trial court to enter a judgment of acquittal.



Ruth A. Willingham · **Clerk of the Court**
F I L E D : RT