NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

KENNETH MARSHALL HICKS, *Appellant*.

No. 1 CA-CR 15-0436
FILED 6-30-2016

Appeal from the Superior Court in Mohave County
No. S8015CR201400952
The Honorable Steven F. Conn, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Jana Zinman
*Counsel for Appellee*

Office of the Legal Advocate, Kingman
By Jill L. Evans
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Diane M. Johnsen and Judge Andrew W. Gould joined.

---

**H O W E**, Judge:

¶1 Kenneth Marshall Hicks appeals his convictions and sentences for several charges related to possession and sale of methamphetamine. He argues that the trial court erred in denying his motion to suppress evidence because the search warrant was not sufficiently particular and police lacked probable cause to arrest him. He also argues that insufficient evidence supports his convictions for conspiracy to sell and sale of methamphetamine. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2 In July 2014, Lake Havasu City Police planned a "controlled buy" of methamphetamine. During this buy, a police informant would meet with drug seller R.P., follow her to the supplier's location, and make a drug deal while the police monitored the transaction. Police furnished the informant with three $100 bills to buy the drugs and a surveillance microphone through which the police could hear the informant's conversations with R.P. Consistent with the plan, R.P. and the informant drove to an apartment complex where R.P.'s supplier, R.M., lived. While driving to the apartment, R.P. told the informant that R.M. was at work and unavailable, but that R.M.'s friend, who was staying in his apartment, could sell her the drugs. R.M. called the friend at his apartment on R.P.'s behalf to set up the deal. Upon arriving at the apartment complex, R.P. got out of the car, met with a man—later identified as Hicks—and returned to the car with methamphetamine. Meanwhile, the officers continued surveillance on the informant and the controlled buy, but could not see the man with whom R.P. met from their location.

¶3 Immediately after the buy, police debriefed the informant, who told police that she saw a black male come down the apartment complex stairs and meet with R.P. She also told police that R.P. was driving home with the methamphetamine in her possession. Based on that information, police stopped and arrested R.P. and upon a subsequent

search found methamphetamine on her. In a police interview that followed, R.P. stated that she purchased the drugs from R.M.'s friend, a black male who was visiting and staying with R.M. in apartment #111 for a few days. She further stated that the man drove a white Nissan Pathfinder.

¶4 While officers interviewed R.P., another officer began drafting a search warrant. The warrant sought authorization to search apartment #111, "an unidentified black male adult and any other persons not yet identified present at [apartment #111] during the execution of the search warrant," and "a white Nissan pathfinder with an unknown license plate driven by and in control of the above unidentified black male adult." The supporting affidavit sought to establish the reliability of the informant as the source of the information by stating that she had done at least five controlled buys for police in the preceding months and had provided information in the past that had been verified through personal knowledge and investigation.

¶5 Based on the information received from the informant, R.P., and the officers who surveilled the controlled buy, another officer began watching R.M.'s apartment while waiting for the search warrant, which a judge ultimately issued. The officer had instructions to look for "a white Nissan Pathfinder . . . driven . . . by a black male, associated with [R.M.] and that apartment number." During that surveillance, the officer saw R.M. exit his apartment and get into a white Nissan Pathfinder driven by Hicks, which had just pulled into the apartment complex. The Pathfinder, towing two jet skis, then left the apartment complex and headed toward the highway. By this time, police knew from the continued interview with R.P. that Hicks' name was "Ken" or "Kenny."

¶6 The officer stopped the vehicle and arrested Hicks for his participation in the drug deal that morning. Pursuant to the search warrant, police searched R.M.'s apartment and Hicks' vehicle, including the two jet skis. Inside one jet ski, an officer found a pair of jeans containing a plastic baggie with 29.8 grams of methamphetamine, a glass pipe with burnt residue, and a wallet with Hicks' identification card and $194.38. Police confirmed that a $100 bill in the wallet was one that they provided to the informant to purchase the drugs that morning. The State consequently charged Hicks with conspiracy to sell dangerous drugs, sale of dangerous drugs, possession of dangerous drugs for sale, and possession of drug paraphernalia.

¶7 Before his jury trial, Hicks moved to suppress the evidence seized from his vehicle, the jet ski, and R.M.'s apartment. Hicks argued that

(1) police lacked the requisite probable cause to arrest him because the information R.P. provided was unreliable and (2) the search warrant was neither sufficiently particular nor based on probable cause. At the suppression hearing, an officer testified that police knew "they had the right guy" when Hicks pulled into the apartment complex to pick R.M. up because "everything added up. Black male . . . a white Pathfinder . . . that apartment. Everything added up." The officer also stated that the information from R.P. was "extremely consistent" with the information from the informant and that the officers listening through the surveillance microphones during the controlled buy corroborated most of the information. He further explained that the officers searched the jet skis because they were connected to and pulled by the white Pathfinder.

¶8 The trial court denied Hicks' motion. The court concluded that probable cause supported Hicks' arrest and that the warrant was sufficiently particular. The trial court also concluded that the search warrant for the vehicle impliedly authorized the search of the jet skis it towed.

¶9 During trial, the informant testified that the man who met with R.P. at the apartment complex was tall, black, and had a shaved head. The State asked the informant if she ever saw R.P. again, to which she responded "no." The State then began to ask the informant if she "ever [saw] the person at the—," when she interjected and responded "at the condo? No." However, an officer testified that Hicks was the driver of the vehicle in which police found the drugs and money from the controlled buy. After the State rested its case-in-chief, Hicks moved for a judgment of acquittal pursuant to Arizona Rule of Criminal Procedure 20, arguing that no evidence placed Hicks at the apartment complex to satisfy the charges of conspiracy to sell and sale of dangerous drugs. But the trial court denied his motion. The jury convicted Hicks of conspiracy to sell dangerous drugs and sale of dangerous drugs relating to the methamphetamine he sold to R.P., and possession of dangerous drugs—a lesser included offense of possession of dangerous drugs for sale—and possession of drug paraphernalia for the drugs and pipe found in the jet ski. The trial court sentenced Hicks to concurrent, mitigated terms of 14 years' imprisonment for the conspiracy conviction, 14 years' imprisonment for the sale conviction, 8 years' imprisonment for the possession conviction, and 3 years' imprisonment for the paraphernalia conviction, applying 338 days' of presentence incarceration credit for each sentence. Hicks timely appealed.

## DISCUSSION

### 1. Motion to Suppress

¶10 Hicks first argues that the trial court erred in denying his motion to suppress the evidence seized from the jet ski because the search warrant was not sufficiently particular and lacked probable cause. He also argues that the trial court erred because police lacked probable cause independent of the search warrant to stop and arrest him. We review the trial court's denial of a motion to suppress for an abuse of discretion. *State v. Nissley*, 238 Ariz. 446, 452 ¶ 24, 362 P.3d 493, 499 (App. 2015). In doing so, we consider only the evidence presented at the suppression hearing and view the facts in the light most favorable to upholding the trial court's ruling. *State v. Yonkman*, 233 Ariz. 369, 371 ¶ 4, 312 P.3d 1135, 1137 (App. 2013). But we review de novo whether a warrant complied with the requirements of the Fourth Amendment to the United States Constitution. *State v. Davolt*, 207 Ariz. 191, 202 ¶ 21, 84 P.3d 456, 467 (2004). Because the search warrant complied with the requirements of the Fourth Amendment, independent probable cause to arrest Hicks was not necessary and the trial court did not err in denying Hicks' motion to suppress.

¶11 The Fourth Amendment to the United States Constitution protects against unreasonable searches and seizures.[1] U.S. Const. amend. IV. The Fourth Amendment prohibits the issuance of a general warrant and instead requires a warrant to be based on a showing of "probable cause, supported by Oath . . . particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV; *see also* A.R.S. § 13–3913. Probable cause supports a search warrant when, given all of the circumstances in the supporting affidavit, a fair probability exists that contraband or evidence of a crime will be found in a particular place. *Illinois v. Gates*, 462 U.S. 213, 238–39 (1983). Additionally, a warrant is sufficiently particular if (1) the place to be searched is described with enough particularity to enable the executing officer to locate and identify the premises with reasonable effort and (2) no reasonable probability exists that another premises may be mistakenly searched. *State v. Coats*, 165 Ariz. 154, 159–60, 797 P.2d 693, 699–700 (App. 1990). A presumption exists in favor of the validity of search warrants. *State v. White*, 145 Ariz. 422, 427, 701 P.2d 1230, 1235 (App. 1985). A warrant should not be invalidated by a

---

[1] Hicks also challenges the search based on Article 2, Section 8 of the Arizona Constitution. We note that in this context, the Arizona Constitution is no broader than the Fourth Amendment. *State v. Juarez*, 203 Ariz. 441, 444 ¶ 14, 55 P.3d 784, 787 (App. 2002).

hypertechnical interpretation when a magistrate has found probable cause to issue it, and supporting affidavits may be referenced to cure defects in a warrant through a "commonsensical and realistic" interpretation. *State v. Ault*, 150 Ariz. 459, 466–67, 724 P.2d 545, 552–53 (1986).

¶12        Here, probable cause supported the search warrant because, given all of the circumstances, a fair probability existed that methamphetamine or the money received in the sale of methamphetamine would be found on Hicks, in his vehicle, or in R.M.'s apartment. Police learned from R.P. and the informant that a black male named either "Ken" or "Kenny" was temporarily staying at apartment #111 and had sold methamphetamine to R.P. earlier that day. The apartment belonged to Hicks' friend and R.P.'s supplier, R.M. Police also learned that Hicks drove a white Nissan Pathfinder. During their surveillance, police saw a man exit apartment #111 and get into a white Nissan Pathfinder driven by a black male adult. During the suppression hearing, an officer testified that he knew he "had the right guy" because "everything added up" based on all of the information he had. Based on these circumstances, a fair probability that contraband or evidence of a crime would be found in those particular places existed.

¶13        Additionally, the search warrant described the person to be searched with sufficient particularity for the officers to identify the person to be searched without reasonable probability of mistake. Although the warrant did not identify Hicks by name, information in the remainder of the search warrant and the affidavit enabled the executing officer to locate and identify Hicks and his vehicle with reasonable effort. As relevant here, the search warrant identified the person to be searched as "an unidentified black male adult" present at apartment #111. The warrant was based on facts in the supporting affidavit that the unidentified black male was visiting and staying with his friend R.M., who lived in apartment #111, for a few days. The affidavit also provided that this unidentified black male drove a white Nissan Pathfinder and met with R.P. earlier that day at the apartment complex. Taken together, the warrant adequately described Hicks, a black male adult associated with and staying at apartment #111 and who drives a white Nissan Pathfinder, as the person to be searched.

¶14        The search warrant also described the place to be searched with sufficient particularity for the officers to identify the property without reasonable probability of mistake. The warrant described the white Nissan Pathfinder, driven by the black male adult associated with apartment #111, as the place to be searched. The search warrant identified the places to be searched as a white Nissan Pathfinder driven by and in control of that

unidentified black male and any vehicles accessible to any person at apartment #111. Based on the information in the warrant and the affidavit, no reasonable probability existed that other persons and places could be mistakenly searched. Thus, because the warrant was sufficiently particular, probable cause existed and the search warrant complied with the Fourth Amendment.[2]

**¶15** Hicks further argues that the trial court erred in denying his motion to suppress because the police lacked "sufficient information after the issuance of the warrant to support probable cause" to arrest Hicks. We review the existence of probable cause de novo. *State v. Aleman*, 210 Ariz. 232, 238 ¶ 15, 109 P.3d 571, 577 (App. 2005). But "probable cause to arrest and probable cause to search are synonymous," so the officers did not need separate probable cause after the issuance of the valid search warrant to stop and arrest Hicks. *State v. Sardo*, 112 Ariz. 509, 515, 543 P.2d 1138, 1144 (1975). Because probable cause supported the search warrant and the search warrant was sufficiently particular, the trial court did not err in finding that probable cause supported Hicks' search or arrest. Accordingly, the trial court did not err in denying Hicks' motion to suppress.

## 2. Sufficiency of the Evidence

**¶16** Hicks next argues that insufficient evidence supports his convictions for conspiracy to sell and sale of methamphetamine. We review the sufficiency of evidence supporting a conviction de novo, viewing the evidence in the light most favorable to sustaining the verdicts and resolving all reasonable inferences against the defendant. *State v. Burns*, 237 Ariz. 1, 20 ¶ 72, 344 P.3d 303, 322 (2015). In reviewing claims for sufficiency of evidence, we determine whether a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Hannah*, 238 Ariz. 5, 6 ¶ 4, 355 P.3d 607, 608 (App. 2015). Reversible error for insufficiency of evidence occurs only when no probative facts support the conviction. *State v. Felix*, 237 Ariz. 280, 289 ¶ 30, 349 P.3d 1117, 1126 (App. 2015). Substantial evidence exists if reasonable persons could accept the evidence as sufficient to support a guilty verdict beyond a reasonable doubt. *State v. Stroud*, 209 Ariz. 410, 411–12 ¶ 6, 103 P.3d 912, 913–14 (2005). The substantial evidence required may be either direct or circumstantial.

---

[2] Because probable cause supports the search warrant with sufficient particularity, we need not address Hicks' argument on whether the good faith exception applies.

*State v. Pena*, 209 Ariz. 503, 505 ¶ 7, 104 P.3d 873, 875 (App. 2005). Here, substantial evidence supports both of Hicks' convictions.

**¶17** First, substantial evidence supports Hicks' conviction for conspiracy to sell dangerous drugs. As relevant here, a person commits conspiracy to sell dangerous drugs if, with the intent to promote or aid the commission of the sale, he agrees with one or more persons that at least one of them will engage in the sale of methamphetamine and one of them commits an overt act in furtherance of that sale. A.R.S. § 13–1003(A). The jury heard evidence that because R.M. was unavailable to get off work to sell R.P. the drugs, he contacted a friend staying at his apartment on R.P.'s behalf to make the deal. When R.P. and the informant arrived at R.M.'s apartment complex, Hicks came down the stairs and met with R.P. in the parking lot. Nothing in the record shows that Hicks came down the stairs or met with R.P. for any other reason. R.P. then returned to the car with the methamphetamine, which she had in her possession when police pulled her over. When police later pulled Hicks over, they found in his possession methamphetamine and a $100 bill that the police had provided the informant to purchase the drugs from R.P.'s supplier. Taking these facts together, a rational trier of fact could have found the essential elements of conspiracy to sell dangerous drugs beyond a reasonable doubt.

**¶18** Second, substantial evidence likewise supports Hicks' conviction for sale of dangerous drugs. As relevant here, a person commits sale of dangerous drugs if he knowingly sells or offers to sell a dangerous drug, which includes methamphetamine. A.R.S. §§ 13–3407(A)(7), –3401(6)(a)(xxiii). After R.M. contacted him, Hicks came down the apartment stairs to meet with R.P. in the parking lot. Again, nothing in the record shows that Hicks came down the stairs for any reason other than to sell the methamphetamine to R.P. After that meeting, the informant saw that R.P. had returned to the car with methamphetamine in her possession, which police found when they pulled R.P. over. Police later found in Hicks' possession one of the bills that they provided the informant to give to R.P. to buy the drugs from her supplier. During the trial, an officer identified Hicks as the man whom he pulled over and on whom he found the money. Taking these facts together, a rational trier of fact could have found the essential elements of sale of dangerous drugs beyond a reasonable doubt. Accordingly, substantial evidence supports Hicks' convictions.

**¶19** Hicks counters that both charges should be vacated because the informant failed to identify him in court as the man she saw sell drugs to R.P. and that no other testimony placed him at apartment #111. But substantial circumstantial evidence exists from which a reasonable trier of

fact could have found that Hicks was the person who sold R.P. the drugs. Specifically, R.P. told police that the man from whom she bought the drugs was R.M.'s friend staying with him in apartment #111 for a few days by the name of "Ken" or "Kenny" and that he drove a white Nissan Pathfinder. When police later pulled over the white Pathfinder, they identified Hicks as the driver and R.M., who had come out of apartment #111, as the passenger. During their search, police found in Hicks' possession one of the $100 bills they gave the informant to purchase the methamphetamine from R.P.'s supplier. The informant also described Hicks in court as tall and with a shaved head. A rational trier of fact could accept these facts as true and sufficient to support guilty verdicts beyond a reasonable doubt. Accordingly, sufficient evidence supports Hicks' convictions.

## CONCLUSION

¶20         For the foregoing reasons, we affirm.



Ruth A. Willingham · Clerk of the Court
F I L E D : AA