# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 59737-3-II |
| Respondent, | |
| v. | |
| JAMES ANTHONY PADRTA, | PUBLISHED OPINION |
| Appellant. | |

MAXA, J. – James Padrta appeals his conviction and sentence for voting both in Washington and in Oregon in November 2022 in violation of RCW 29A.84.650(1).

RCW 29A.84.650(1) states, "Any person . . . who intentionally votes or attempts to vote in both this state and another state at any election, is guilty of a class C felony." It is undisputed that Padrta voted both in Washington and in Oregon in November 2022. Because 2022 was a midterm election year, there was no overlap in the candidates or issues on the Washington and Oregon ballots.

Padrta argues that the State presented insufficient evidence to convict him of voting in two states in the same election under RCW 29A.84.650(1) because "election" must be interpreted as referring to a choice between specific candidates or propositions, and the candidates on Washington and Oregon ballots were different. The State argues that the only

reasonable interpretation of "election" is that it is the process of voting for candidates, because Padrta's interpretation would make it impossible to violate the relevant portion of RCW 29A.84.650(1).

This is the first case involving the interpretation of RCW 29A.84.650(1). We conclude that the plain language of the statute is subject to two reasonable interpretations, making the statute ambiguous.

In light of an Arizona case that supports Padrta's position and the presumed intent of the legislature to prohibit someone from voting twice for the same candidate or issue, we resolve the ambiguity by adopting Padrta's interpretation. Under this interpretation, the Washington election and the Oregon election were not the same election. Therefore, we hold that the evidence was insufficient to convict Padrta of repeat voting under RCW 29A.84.650(1).

Accordingly, we reverse Padrta's conviction and remand to the trial court with instructions to dismiss the case with prejudice.[1]

FACTS

Padrta previously lived in Oregon and was registered to vote there. In July 2022, Padrta moved to Washington. Padrta obtained a Washington driver's license, which caused him to become a registered voter in Washington. Apparently, Padrta's registration in Oregon was not canceled.[2] Therefore, Padrta was registered to vote in both states.

---

[1] Padrta also argues that the trial court abused its discretion when it admitted his Oregon voting records into evidence. Because we reverse Padrta's conviction, we do not address this argument.

[2] RCW 29A.08.135(1) states, "When a person who has previously registered to vote in another state applies for voter registration in Washington, the person shall provide on the registration form all information needed to cancel any previous registration. Notification must be made to the state elections office of the applicant's previous state of registration." Apparently, Oregon was not notified when Padrta became registered to vote in Washington.

Padrta voted on the Lewis County, Washington ballot for the November 2022 general election and mailed it on October 25, 2022. The ballot was received by the Lewis County Auditor two days later. Padrta received a Clackamas County, Oregon ballot for the November 2022 general election in his post office box in Oregon. He voted on that ballot and mailed it on November 5, 2022. Oregon election officials received Padrta's ballot on November 8, 2022.

The Lewis County Auditor's Office was informed that Padrta returned ballots in both states through a vote monitoring system. The State charged Padrta with repeat voting in violation of RCW 29A.84.650(1).

The case proceeded to a bench trial. Jolene Manuel, the Lewis County election manager, testified that Lewis County received a ballot from Padrta for Washington's November 2022 general election. She also testified that she received information from the Washington Secretary of State that Padrta had voted in both Washington and Oregon.

Manuel stated that there is a system called the Electronic Registration Information Center (ERIC), which state election officials use to monitor voting in various states. The ERIC system identified that Padrta had voted in both Oregon and Washington, which caused Oregon officials to send Padrta's voting records to the Washington Secretary of State. The Secretary of State forwarded those records to Lewis County. The trial court admitted certified copies of the Oregon voting records, which Manuel had reviewed. These records showed that Padrta voted in Clackamas County, Oregon in November 2022.

Matthew Wallace, a detective sergeant for the Lewis County Sheriff's Office, testified that he spoke with Padrta after receiving information from Manuel. Padrta acknowledged to Wallace that he had voted on ballots in both Washington and Oregon.

3

Padrta testified that he voted in both the Washington and Oregon elections. He also acknowledged that he already had voted in Washington when he picked up his Oregon ballot. Padrta stated that he did not vote for identical candidates or issues in Washington and Oregon. He stated, "It was totally different issues, totally different representatives." Rep. of Proc. ((May 14, 2024) at 42.

The trial court convicted Padrta of repeat voting. The court entered the following conclusions of law:

> 2.3 The defendant intentionally voted in Washington and in Oregon.
> 2.4 This voting occurred in the same election.

Clerk's Papers at 10-11. The court did not impose any time in confinement.

Padrta appeals his conviction.

## ANALYSIS

A.    SUFFICIENCY OF THE EVIDENCE – REPEAT VOTING

Padrta argues that the State presented insufficient evidence to convict him of repeat voting in violation of RCW 29A.84.650(1) because he did not vote in both Washington and Oregon in the same "election." We agree.

1.    Legal Principles

The test for determining sufficiency of the evidence in a bench trial is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Roberts*, 5 Wn.3d 222, 231, 572 P.3d 1191 (2025).

Padrta's argument depends on the statutory interpretation of RCW 29A.84.650(1). Statutory interpretation is a question of law that we review de novo. *State v. Abdi-Issa*, 199 Wn.2d 163, 168, 504 P.3d 223 (2022). The primary goal of statutory interpretation is to

determine and give effect to the legislature's intent. *Id.* To determine the legislature's intent, we first look to the plain language of the statute, considering the language of the provisions in question, how the provisions fit within the context of the statute, and the statutory scheme as a whole. *Id.* at 168-69. If a word is not defined in the statute, we can consider dictionary definitions to attempt to determine the word's ordinary meaning. *State v. Hribar*, 34 Wn. App. 2d 546, 554, 569 P.3d 743, *review denied,* 5 Wn.3d 1014 (2025).

The language of a statute is ambiguous if it is susceptible to more than one reasonable interpretation. *State v. M.V.*, 33 Wn. App. 2d 658, 662, 564 P.3d 564 (2025). We "first attempt to resolve the ambiguity and determine the legislature's intent by considering other indicia of legislative intent, including principles of statutory construction, legislative history, and relevant case law." *Id.* "If these indications are insufficient to resolve the ambiguity, the rule of lenity requires that we interpret the ambiguous statute in favor of the defendant." *Id.*

One principle of statutory construction is that courts generally interpret ambiguous language to avoid absurd results. *State v. Schwartz*, 194 Wn.2d 432, 443, 450 P.3d 141 (2019). We presume that the legislature did not intend absurd results. *Id.*

2.     Relevant Statutes

RCW 29A.84.650(1) states, "Any person who intentionally votes or attempts to vote in this state more than once at any election, or who intentionally votes or attempts to vote in both this state and another state at any election, is guilty of a class C felony." The second clause is at issue in this appeal.

RCW 29A.04.043 states, " 'Election' when used alone means a general election except where the context indicates that a special election is included. 'Election' when used without qualification does not include a primary." RCW 29A.04.073 defines a "general election" as "an

election required to be held on a fixed date recurring at regular intervals." These statutes are circular because they define "general election" as an "election" without stating what "election" means. Neither statute provides a meaningful definition of "election."

3. Meaning of "Any" Election

RCW 29A.84.650(1) criminalizes voting in Washington and another state "at any election." Although the phrase "at any election" is broad, both parties agree that the only reasonable interpretation is that a person is prohibited from voting twice in the *same* election. And the trial court entered a conclusion of law stating that Padrta voted in Washington and Oregon in the same election.

4. Meaning of "Election"

Because chapter 29A.84 RCW does not define the term "election," we must give the term its plain and ordinary meaning. *Abdi-Issa*, 199 Wn.2d at 168. We may consult dictionaries for undefined terms to determine a statute's plain meaning. *Hribar*, 34 Wn. App. 2d at 554.

Padrta argues that ordinary meaning of an election refers to a choice among specific candidates or propositions. Therefore, an election can be considered the same only if the slate of candidates and propositions are the same. Padrta emphasizes that an election is defined by the issues being voted on, not the date of the election. Therefore, Padrta argues that to be convicted of repeat voting in the same election, the State was required to show that a person could vote for the same candidates or issues in both elections. Under Padrta's interpretation of the statute, the Washington and Oregon November 2022 general elections were not the same election because they had a completely different slate of candidates. And Padrta was not guilty because he only voted once in each of two separate elections.

The State argues that the ordinary meaning of an election refers to the *process* of voting for candidates. The State asserts that an election is more than a slate of candidates, but instead is the time when people are given the opportunity to vote for whatever candidates and issues are on the ballot. The State suggests that all elections that take place on the same date constitute the same election, regardless of the slate of candidates or issues.

The dictionary defines "election" as "the act or process of electing," "the act or process of choosing a person for office position, or membership by voting," and "an instance of the electorate's exercising its function." WEBSTER'S THIRD NEW INT'L DICTIONARY 731 (2002). *Black's Law Dictionary* defines "election" to include "[t]he process of selecting a person to occupy an office ([usually] a public office), membership, award, or other title of status < the 2004 congressional election >." BLACK'S LAW DICTIONARY 653 (12th ed. 2024). These definitions are not particularly helpful because they could support either interpretation. Padrta emphasizes that these definitions do not indicate that a particular date is an attribute of an election. But the definitions refer to a process, which is how the State defines election.

We conclude that although the State may have the better argument, both interpretations of the term "election" in RCW 29A.84.650(1) are reasonable. An election can be understood as referring to a specific slate of candidates and issues on a particular ballot in one location. It seems questionable that an election in Washington regarding Washington local positions and issues should be treated as the same election as an election in some other state regarding that state's local positions and issues. On the other hand, an election can be understood as referring more generally to the process by which people vote on candidates and issues. In common usage, the term election may refer to the date that state conducts voting, which currently is the same

7

across the country for general elections. When most people refer to an election, they are referring to the process or the date rather than a slate of candidates or issues.

Because both interpretations are reasonable, we conclude that the term "election" in RCW 29A.84.650(1) is ambiguous. *See M.V.*, 33 Wn. App. 2d at 662. When a statute is ambiguous, we look to indicia of the legislature's intent including canons of construction, legislative history, and case law. *Id.*

Padrta relies on out-of-state case law to resolve the ambiguity. He argues that *State v. Hannah*, 238 Ariz. 5, 355 P.3d 607 (Ct. App. 2015), supports his interpretation that voting in the same election requires there to be some overlap in candidates. In that case, Hannah voted in the November 2, 2010 election in both Arizona and in Colorado. *Id.* at 608. There was no overlap in candidates or issues on the two ballots. *Id.*

Arizona's repeat voting statute stated that a person was guilty of felony if the person " '[k]nowingly votes more than once at any election.' " *Id.* (alteration in original) (quoting ARIZ. REV. STAT. § 16-1016(2)).[3] The State argued that the statute did not require proof that the votes were in the same election or "for or against the same candidates." *Id.* (emphasis omitted). The State also argued that the elections held on November 2, 2010 were part of one election because federal law designated that specific day to select candidates. *Id.* at 609.

The Arizona Court of Appeals held that the general elections in Arizona and Colorado were not the same election for purposes of the statute. *Id.* The court noted that although even-

---

[3] After *Hannah* was decided, the Arizona legislature enacted two more subsections to the statute, ARIZ. REV. STAT. § 16-1016(3)-(4), to clarify its intent. Those provisions prohibit voting multiple times in Arizona and voting "in [Arizona] in an election in which a federal office appears on the ballot and votes in another state in an election in which a federal office appears on the ballot and the election day for both states is the same date." Senate Bill 1370, 53d Reg. Sess. (Ariz. 2017).

numbered year elections in November are referred to as "national elections," the elections are separate elections run individually by the states. *Id.* The court also stated that each state conducts a "separate election for the selection of its Senators and Representatives as constitutionally provided." *Id.* Therefore, the court held that even though both elections occurred on November 2, 2010, they were "separate and discrete elections, held in two different states." *Id.* And there was no evidence that Hannah's "vote received more weight than that of any other citizen, where there is no evidence that any candidate appeared on both ballots and 2010 was not a presidential election year." *Id.*

The State does not address *Hannah*. The State also cites no cases that support its interpretation of the statute.

The State's primary argument is that Padrta's interpretation would lead to absurd results. According to the State, under Padrta's interpretation, it would be impossible to violate the second clause of RCW 29A.84.650(1) because the ballots in two states always will have different candidates and issues. We generally interpret ambiguous language to avoid absurd results. *Schwartz*, 194 Wn.2d at 443.

Padrta responds that a person would violate RCW 29A.84.650(1) if there is some overlap between the candidates, such as in a presidential election year. The court in *Hannah* suggested that elections in Arizona and Colorado would constitute the same election in a presidential election year. *See* 355 P.3d at 609.

The State also argues that legislative history supports an interpretation of RCW 29A.84.650(1) that is not based on the slate of candidates. Before 2005, RCW 29A.84.650 stated, "Any person who votes or attempts to vote more than once at any primary or general or

9

special election is guilty of a gross misdemeanor, punishable to the same extent as a gross misdemeanor is punishable under RCW 9A.20.021." Former RCW 29A.84.650 (2003).

In 2005, the legislature amended the statute. One proposed amendment stated,

"Any person who votes or attempts to vote more than once ((at any)) in this state in the same primary or general or special election, or who is registered to vote in another state and who votes or attempts to vote in this state, is guilty of a ((gross misdemeanor)) class C felony, punishable ((to the same extent as a gross misdemeanor that is punishable)) under RCW 9A.20.021."

Senate Bill 5449, 59th Leg. Reg. Sess. (Wash. 2005) (SB 5449) (alterations in original). But that proposed amendment was not adopted. Instead, the legislature enacted RCW 29A.84.650(1), which added the intent requirement and states "at any election."

The State argues that SB 5449 shows that the legislature did not intend to require an election to contain the same slate of candidates. But SB 5449 never passed the legislature, indicating that the legislature's intent was *not* to criminalize voting in Washington while registered to vote in another state. And the legislative history does not answer the specific question of what makes two elections in different states the same.

Ultimately, our goal is to determine the legislature's intent. *Abdi-Issa*, 199 Wn.2d at 168. In the absence of any clear legislative history, we presume that the legislature was trying to prevent a person from voting twice for the same candidate or resolution.[4] As the court noted in *Hannah*, the concern regarding repeat voting is to prevent a person's vote from "receiv[ing] more *weight* than that of any other citizen." 355 P.3d at 609 (emphasis added). It is hard to imagine that the Washington legislature would be concerned that someone would vote in the same year

___

[4] It is worth noting that RCW 29A.52.161, which admittedly is in a different chapter of Title 29A than RCW 29A.84.650(1), states, "Nothing in this chapter may be construed to mean that a voter may cast more than one vote *for candidates for a given office*." (Emphasis added.)

both for a local candidate in Lewis County and a local candidate in Clackamas County, Oregon. This presumed intent favors Padrta's interpretation.

We resolve the ambiguity in the meaning of "election" by adopting Padrta's interpretation of the statute. The court's reasoning in *Hannah* is persuasive: the elections held in Washington and Oregon, "although occurring on the same day, were separate and discrete elections held in two different states." 355 P.3d at 609. In addition, Padrta's interpretation is consistent with the presumed legislative intent: to prevent a person from voting twice for the same candidate or resolution. Accordingly, we conclude that the term "election" in RCW 29A.84.650(1) refers to a choice among a specific slate candidates or propositions, and not to the more general process of voting on a particular day.

The State argues that Padrta's interpretation would mean that RCW 29A.84.650(1) would never apply because no two ballots in different states would be identical. But a reasonable interpretation of RCW 29A.84.650(1) is that the statute applies when there is some overlap between candidates in the two states. We acknowledge that this interpretation means that the second clause of RCW 29A.84.650(1) potentially would apply only every four years when the United States President is on the ballot. But especially in today's political climate, voting twice for President undoubtedly is a significant concern.

Finally, if we cannot resolve the ambiguity, then the definition of what constitutes the same election in multiple states under RCW 29A.84.650(1) remains ambiguous. Even if the traditional methods of statutory interpretation do not lead to a clear indication of the legislature's intent, we must apply the rule of lenity to interpret the statute in a manner favorable to Padrta. *M.V.*, 33 Wn. App. 2d at 662.

11

Our interpretation avoids the need to address the potential jurisdictional/constitutional issue that Padrta's conviction creates. Padrta's vote in Washington was perfectly legal under RCW 29A.84.650(1) – he had not yet voted in Oregon. The State prosecuted Padrta for voting in Oregon. It is unclear whether Washington can criminalize something done in another state, just as it is unclear whether another state can criminalize something done in Washington.

5. Analysis

Here, there is no evidence that the slate of candidates in Lewis County, Washington was the same as those in Clackamas County, Oregon such that Padrta's vote in Oregon overlapped with any vote in Washington. Therefore, we hold that the State's evidence was insufficient to show that Padrta voted in the same election in Washington and Oregon.

CONCLUSION

We reverse Padrta's conviction and remand to the trial court with instructions to dismiss the charge with prejudice.

_____
MAXA, J.

I concur:

_____
VELJACIC, A.C.J

LEE, J. (dissenting) — I respectfully disagree with the majority that the plain language of RCW 29A.84.650(1) is ambiguous and that the ambiguity requires the application of the rule of lenity to interpret the statute in a manner favorable to Padrta. Instead, I would hold that the language in RCW 29A.84.650(1) is clear and that sufficient evidence shows Padrta violated the plain language of that statute. Thus, I would affirm Padrta's conviction.

RCW 29A.84.650(1) states:

> Any person who intentionally votes or attempts to vote in this state more than once at any election, or *who intentionally votes or attempts to vote in both this state and another state at any election*, is guilty of a class C felony. (Emphasis added.)

At issue is the second clause of the statute.

The majority focuses its attention on the term "election" to find an ambiguity. I disagree with the majority that focusing on the term "election" while ignoring the other language in the RCW 29A.84.650(1) is the proper interpretation of this statute. Instead, the proper interpretation of RCW 29A.84.650(1) should focus how "election" is statutorily defined and on all the terms used in the statute, including "who intentionally votes or attempts to vote in both this state and another state."

A.    MEANING OF "ELECTION"

The majority states that the term "election" is ambiguous because it is "circular." However, the majority fails to elaborate as to how the statutes defining "election" are "circular."

"Election" is statutorily defined as:

> "Election" when used alone means a general election except where the context indicates that a special election is included. "Election" when used without qualification does not include a primary.

RCW 29A.04.043. In turn, "general election" is defined as:

> "General election" means an election required to be held on a fixed date recurring at regular intervals.

RCW 29A.04.073. Thus, when the statutory definitions are applied, "election" means "an election required to be held on a fixed date recurring at regular intervals." RCW 29A.04.043; RCW 29A.04.073. Nothing more, nothing less, and not ambiguous.

The State interprets "election" to mean "all elections that take place on the same date…regardless of the slate of candidates or issues." Majority Op. at 7. The majority finds the State's interpretation of "election" to be reasonable. Majority Op. at 7. However, the majority also adopts as "reasonable" Padrta's interpretation of "election" to mean "refers to a choice among specific candidates or propositions." Majority Op. at 6. Thus, the majority concludes that because there are two reasonable interpretations of "election," the term is ambiguous. Therefore, according to the majority, the rule of lenity should apply, and the statute should be interpreted as Padrta contends—that the term "election" should be interpreted to mean that "the term 'election' in RCW 29A.84.650(1) refers to a choice among a specific slate candidates or propositions, and not to the more general process of voting on a particular day." Majority Op. at 11.

I disagree with the majority's approach of finding an ambiguity in the term "election" by reading into the definition of "election" words that are clearly not there, especially when the statutes clearly define "election." The statutes do not define "election" to mean "a specific slate of candidates or propositions." Nor is there any language in the definitional statutes for "election" to create such a definition.

Moreover, reading into the statutes the requirement that "election" means the same slate of candidates or propositions ignores the language "in both this state and another state." This state and another state necessarily will have a different slate of candidates (except for a presidential election cycle where at most two candidates will overlap) and different propositions. Thus, under

14

the majority's interpretation, the terms "in both this state and another state" is read out of the statute and the statute could never be violated. I am disinclined to adopt such an interpretation.[5]

The majority appears to rely on *State v. Hannah*, 238 Ariz. 5, 355 P.3d 607 (Ct. App. 2015), to support its found ambiguity. However, *Hannah*, interpreted an Arizona statute that is dissimilar to RCW 29A.84.650(1). The statute at issue in *Hannah* stated:

"A person is guilty of a class 5 felony … [k]nowingly votes more than once at any election."

*Hannah*, 238 Ariz. at 6 (quoting A.R.S. §16-1016(2)). Clearly missing in the Arizona statute is RCW 29A.84.650(1)'s requirement that the person "intentionally vote[] or attempt[] to vote in this state and another state." Thus, *Hannah* is not helpful.[6]

The Washington legislature statutorily defined "election." And based on the plain language of the statutory definitions, an "election" is "an election required to be held on a fixed date recurring at regular intervals." RCW 29A.04.043; RCW 29A.04.073. I find no ambiguity with the term "election."

---

[5] Other statutory provisions show the Legislature's intent to prohibit someone from voting in Washington and in another state. *See, e.g.*, RCW 29A.08.135 (requiring a person who has previously registered to vote in another state and is registering to vote in Washington to provide all information needed to cancel the previous registration, and requiring the county auditor to immediately cancel any voter's registration on the official state voter registration list upon receipt of official information that the voter has registered to vote in another state); RCW 29A.04.151 (setting forth residency requirements for registering to vote and voting but clarifying that absence from the state shall not affect "the residency of any person unless the right to vote has been claimed or exercised elsewhere").

[6] I note that the Majority unfairly faults the State for not addressing *Hannah*, an out of state case based on statutory language that is different from RCW 29A.84.650(1), and for not citing to cases that support the State's interpretation of RCW 29A.84.650(1), especially when the Majority acknowledges that this is the first case involving the interpretation of RCW 29A.84.650(1).

B.     PADRTA VIOLATED THE PLAIN LANGUAGE of RCW 29A.84.650(1)

Under the plain language of the statutes, a person violates RCW 29A.84.650(1) by intentionally voting or attempting to vote "in both this state and another state at [an election required to be held on a fixed date recurring at regular intervals]."  RCW 29A.84.650(1); RCW 29A.04.043; RCW 29A.04.073.  The record shows sufficient evidence supports the finding that Padrta violated the plain language of RCW 29A.84.650(1).

Here, Padrta admitted that he voted in both Washington and Oregon in the November 2022 election.  There is no dispute that the November 2022 election was a general election that is required to be held on a fixed date every year.  Therefore, because Padrta voted in this state (Washington) and another state (Oregon) at an election required to be held on a fixed date recurring at regular intervals, I would hold that sufficient evidence supports Padrta's conviction and affirm Padrta's conviction.



Lee, J.